520 A.2d 534

Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Petitioner *v.* John J. Kohn, Respondent.

Argued September 12, 1986, before Judges MACPHAIL and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Felix Thau,* Deputy Chief Counsel, for petitioner.

*Victor Dell'Alba, Dell'Alba, Heim & Lecates,* for respondent.

OPINION BY JUDGE PALLADINO, January 28, 1987:

This is an appeal by the Pennsylvania Liquor Control Board (LCB) from an order of the Board of Claims (BOC) dated December 19, 1985, awarding damages and interest to John J. Kohn pursuant to the provisions of the Heart and Lung Act.[1] For the reasons which follow, we reverse.

Kohn was employed by the LCB as an enforcement officer. As part of the duties of this job, Kohn was required to participate in raids upon unlicensed establishments selling alcoholic beverages and to confiscate cases of beer and liquor therefrom. On September 23, 1973, while engaged in one of these raids, Kohn developed severe chest pains, radiating to both arms and also to his jaw. These pains were diagnosed as angina pectoris resulting from coronary artery disease.

Kohn continued working, on and off, for the LCB until October 22, 1973 and asserts that since that time he has been unable to return to work.

On October 31, 1974, Kohn requested Heart and Lung Act benefits from the LCB. This request went unanswered. Thereafter, on May 19, 1975, he requested Heart and Lung Act benefits from the State Work-

---

[1] Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §637.

men's Insurance Fund. This request was also ignored. As a result, Kohn filed a Petition for Review with this Court: (1) invoking our original jurisdiction, seeking relief sounding in mandamus and asking us to compel the Chairman of the LCB to either hold a hearing on his Heart and Lung Act claim or to order compensation thereunder; or (2) invoking our appellate jurisdiction, requesting us to consider the LCB's failure to respond to his application for benefits to be a denial thereof and, thus, a reviewable adjudication.

In *Kohn v. Kaplan,* 31 Pa. Commonwealth Ct. 166, 375 A.2d 1356 (1977), *(Kohn I),* we held that neither the LCB nor its Chairman had jurisdiction to adjudicate claims which might be the obligation of the Commonwealth to pay and directed Kohn to bring his claim before the BOC.

Subsequently, Kohn filed his claim with the BOC and, on November 19, 1980, was awarded benefits. The LCB appealed therefrom and, in *Pennsylvania Liquor Control Board v. Kohn,* 65 Pa. Commonwealth Ct. 300, 442 A.2d 47 (1982), *(Kohn II),* we reversed the order of the BOC and remanded in order to allow cross-examination of Kohn's medical witness by the LCB.[2] On remand, and after the doctor had again been deposed, the BOC granted benefits to Kohn. It is from this order that the LCB appeals.

---

[2] The BOC has based its decision, in part, on a deposition of Kohn's medical witness, Dr. Lisan, which had been taken for a proceeding before the State Employees' Retirement Board. The LCB was not a party to that proceeding and, therefore, never had the opportunity to cross-examine Dr. Lisan.

In *Kohn II,* the LCB also sought review of BOC's award on the basis that substantial record evidence did not support the determination that Kohn suffered an injury resulting in temporary total disability. This Court, however, did not reach that issue, disposing of the matter on the lack of cross-examination issue.

On appeal, the LCB raises the following two issues for our disposition: (1) whether the BOC has subject matter jurisdiction over claims brought under the Heart and Lung Act; and (2) whether the record contains substantial evidence to support a finding that Kohn's injury was temporary.

Our scope of review is limited to determining whether BOC has committed any errors of law and whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

We addressed the first issue in *Kohn I*. While the Courts of this Commonwealth have repeatedly held that objections to the lack of subject matter jurisdiction of a tribunal can never be waived, and may be raised at any time by the parties or *sua sponte* by an appellate court, *Commonwealth v. Little*, 455 Pa. 163, 314 A.2d 270 (1974); *Daly v. Darby Township School District*, 434 Pa. 286, 252 A.2d 638 (1969); *Pennsylvania National Guard v. Workmen's Compensation Appeal Board*, 63 Pa. Commonwealth Ct. 1, 437 A.2d 494 (1981), we are not persuaded that we were incorrect in *Kohn I*, nor has there been any change in the law (case, procedural or statutory) which would necessitate a review of our earlier position.[3]

---

[3] The LCB asserts that in *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), our State Supreme Court held that the involved agency must conduct a hearing for Heart and Lung Act benefits. However, *Callahan* involved the termination of Heart and Lung Act benefits which were already being paid, not the initial decision as to whether benefits were payable. Further, the Court stated that due process requires a hearing before these benefits may be terminated but did not specify a tribunal for such hearing.

As to the second issue, the Heart and Lung Act states, in pertinent part:

> (a) . . . [A]ny enforcement officer or investigator employed by the Pennsylvania Liquor Control Board . . . who is injured in the performance of his duties . . . and by reason thereof is *temporarily incapacitated* from performing his duties, shall be paid by the Commonwealth of Pennsylvania . . . his full rate of salary . . . until the disability arising therefrom has ceased. . . .

53 P.S. §637(a) (emphasis added).

The LCB avers that *temporary incapacity* is a necessary element of proof in order to recover under the Act, which Kohn failed to establish. Our State Supreme Court recently reviewed the intent and parameters of the Heart and Lung Act in *Cunningham v. Pennsylvania State Police*, 510 Pa. 74, 507 A.2d 40 (1986). Chief Justice NIX, writing for the majority, stated:

> Given the purpose of the Act, we have concluded that it was intended to cover only those disabilities where the injured employees were expected to recover and return to their positions in the foreseeable future. . . . Where a disability is of indeterminate duration and recovery is not projected in the foreseeable future, it cannot be deemed 'temporary' within the meaning of the Act. The Commonwealth has no obligation to provide compensation or to pay medical bills for permanent incapacity.

*Id.* at 81, 507 A.2d at 43-44 (citations omitted).

A review of the record yields no evidence in support of the BOC's determination that Kohn's injury was temporary. In fact, both Kohn and his medical witness, Dr. Lisan, testified that he was not capable of returning to work.[4]

---

[4] On direct examination before the BOC the following colloquy took place between Kohn and his attorney:

Therefore, since the conclusion of the BOC, that Kohn suffered from a temporary disability from Sep-

Q. Mr. Kohn, do you still visit Dr. Lisen [sic] for treatment:
A. Yes, I do.
Q. And what is the frequency of these visits?
A. Monthly.
Q. And as far as his recommendation to you, did he ever recommend that you are fit to go back to work?
. . . .
A. Yes, I described the duties of an enforcement offiter (sic) and he informed me that there was no way that I could perform the duties of an enforcement officer, either mentally and/or physically or mentally.

Transcript at 8.

Dr. Lisan, when deposed, supported Kohn's statements:

Q. As a result of your examination of this individual and treatment of this individual, did you come to any conclusion with a reasonable degree of medical certainty as to what his ailment was?
A. Yes, I did. I came to the conclusion that this man had coronary artery disease and was having angina pectoris, which means he was having pain in his chest due to coronary insufficiency.
. . . .
Q. Doctor, if this pain would develop while he was working and he continued to work, would that aggravate his condition?
A. It certainly would, and it could be dangerous and could even result in death.
Q. Do you feel that a person then with this condition should undergo any position that requires physical exertion or stress?
A. No, he should not.
Q. You were aware, were you not, Doctor, of the kind of job, when you took your history, that Mr. Kohn did?
A. Yes, I was; and I think sometime subsequent to that there was a job description that was sent to me, which detailed exactly what this job entailed. So I'm well aware of what he was supposed to be doing and what he was doing.

tember 23, 1973 to April 4, 1975,[5] is not supported by substantial evidence in the record, we must reverse.[6]

---

Q. Based on what he was supposed to be doing and what his job required of him and what you were told, do you have any opinion with a reasonable degree of medical certainty as to whether or not in his condition he could perform that job?

A. No, he could not perform that specific job that he was doing.

Q. Doctor, was that your opinion when you first examined him about—1973, was it?

A. Yes, I believe that was the date.

Q. Since that time have you continued to treat this individual?

A. Yes, I have seen John Kohn approximately every month since that period of time.

Q. When is the last time that you saw him as a patient?

A. I saw him March 22 of 1979.

Q. Do you have any opinion with a reasonable degree of medical certainty as to whether or not on March 17, 1979, Mr. Kohn could do the job as was defined to you by the Board?

A. No, he is not able to do that job.

Lisan Deposition, April 6, 1979, pgs. 7-9.

Not only does this testimony not support a conclusion that Kohn's injury was temporary, it seems abundantly clear that Dr. Lisan thought this injury was permanent when it happened in 1973 and feels no different six years later.

[5] There is no record evidence as to why Kohn alleges that his disability was no longer temporary as of April 4, 1975. The only reference to the April 4, 1975 date occurred in a colloquy between Kohn's attorney and the BOC hearing officer. The attorney stated that April 4, 1975 was the date on which Kohn's injury was adjudged permanent for Workmen's Compensation purposes. This determination was not introduced into evidence before the BOC, is not being thereon and does not indicate when the injury would be considered permanent for Heart and Lung Act cases.

[6] While the Liquor Control Board must follow the procedure outlined in this case, other adjudicatory processes are utilized by the various agencies. *See e.g., Palmeri v. Pennsylvania State Police,* 508 Pa. 544, 499 A.2d 278 (1985); *Hasinecz v. Pennsylvania State Police,* 100 Pa. Commonwealth Ct. 622, 515 A.2d 351 (1986); *Brady v. Borough of Dunmore,* 84 Pa. Commonwealth Ct. 331, 479 A.2d 59 (1984).

## Order

And Now, January 28, 1987, the order of the Board of Claims in the above-captioned matter is reversed.